[CERTIFIED TRANSLATION], page 1 of 22, gcordero 

**Commonwealth of Puerto Rico**
**Court of First Instance**
San Juan Superior Part

ELECTRONIC FILING OF PROOF OF CLAIM

| | |
|---|---|
| **Filing Date:** | February 19, 2016 at 4:16 PM |
| **Case Name:** | PEDRO SANTIAGO MENDEZ VS. AUTORIDAD DE ENERGIA ELECTRICA AEE AND OTHERS [ET ALS] |
| **Case Num.:** | SJ2016CV00043 |
| **Docket Num:** | CV - 000003161 |
| **Document filed:** | COMPLAINT |
| **Filed by:** | ATTY. MANUEL FERNANDEZ MEJLAS |
| **Come Now:** | ALBERTO BACO BAGUE, AUTOR]DAD DE ENERGIA ELECTRICA AEE, CARLOS BONILLA AGOSTO, CARLOS GALLISA BISBAL, CESAR MIRANDA, ENID MONGE PASTRANA, HARRY RODRIGUEZ GARCIA, LUIS BENITEZ HERNANDEZ, LUIS SANTINI GAUDIER, MIGUEL TORRES DIAZ, PEDRO SANTIAGO MENDEZ, PETROBRAS AMERICA INC., PE IROWEST INC, SHELL TRADING USA COMPANY, VITOL INC, VITOL SA |
| **Supreme Court Num.:** | 8170 |
| **Payment Confirmation:** | 28901735 |

Your first claim or complaint was filed into the Unified Case Management and Administration System (SUMAC) (Duties Paid $90.00).

**YOU ARE HEREBY ADVISED THAT** you must recur to the Courts Office of the Clerk with printed copy of the summons forms for their corresponding issuing, as necessary in accord with Rules for Civil Proceedings. In the case of not having electronically paid the duties as established by Law for the undersigned filing, the document shall not be constituted as filed. In the case that you paid duties in a greater amount, it shall be understood you have waved said excess. In the case that you paid duties in a lesser amount to thus provided by Law, the document shall not be understood to have been filed. Payments made electronically are not electronically transferable nor reimbursable.

"The undersigned proof of filing has been created by SUMAC"

Created: 19.2.2016

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SAN JUAN SUPERIO PART**

| | |
|---|---|
| **PEDRO J SANTIAGO MENDEZ AND THE CLASS COMPRISED OF ALL RESIDENTIAL ELECTRIC POWER [AUTHORITY] CONSUMERS PUBLIC HOUSING PROJECTS UNDER THE GENERAL RESIDENTIAL RATE, CLIENTS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY; (The class)** | CIVIL NUMBER<br><br>PART:<br><br><br>RE:<br>Claim under the Class Action Act by Goods and Services Consumers, as amended, 32 L.P.R.A., sec. 3341. UNJUST ENRICHMENT, DAMAGES, VIOLATION OF ANTITRUST LAW |
| Plaintiffs | |
| v. | PERMANENT INJUCTION |
| **PUERTO RICO ELECTRIC POWER AUTHORITY; its Board of Governance comprised by HARRY RODRIGUEZ GARCIA, LUIS BENITEZ HERNANDEZ, CARLOS BONILLA AGOSTO, ENID MONGE PASTRANA, LUIS SANTINI GAUDIER, CARLOS GALLISA BISBAL, MIGUEL A TORRES DIAZ (*ex-officio* member), A-Z DEFENDANTS, all unknown members of the Board of Governance for the ELECTRIC POWER AUTHORITY; THE COMMONWEALTH OF PUERTO RICO, REPRESENTED BY ITS SECRETARY OF JUSTICE, HON. CESAR MIRANDA IN HIS OFFICIAL CAPACITY; A, B, C Assurers [Insurance Co.'s); Richard Doe and Jane Doe, PETROBRAS AMERICA, INC., SHELL TRADING (US) COMPANY, PETROWEST,M INC. VITOL, S.A. VITOL, INC., and 1-100 UNKNOWN DEFENDANTS** | |
| Defendants | |

**CLASS ACTION**

TO THE HONORABLE COURT:

COMES NOW the Plaintiff part pro se and in representation of all those who find themselves in similar situation, by conduit of undersigning legal counsel and very respectfully SETS FORTH, ALLEGES AND PLEADS:

## I. INTRODUCTION

The undersigned is a consumer class action suit , pursuant to the provisions of Law number 118 of June 25, 1971 (32 LPRA 3341 to 3344) and its interpretative jurisprudence, by a Plaintiff Representative [Lead Plaintiff] of all those Puerto Rico Electric

Power Authority (hereon denominated "AEE") residential consumers under the General

Residential Service ("GRS"), in which we hereby allege, in essence, that AEE, during

the past ten years has acquired fossil fuels for operating its energy power plants

containing contaminants and of lower quality than that which appeared on its bills

[invoices], by means of an agreement, in combination or in conspiracy with its

suppliers. We allege that AEE proceeded to include the excess cost of said fuels (the

difference between the market value of the fuel it acquired and what would be the

market value of that which it actually utilized) in the line item called "fuel adjustment

clause" (adjustment clause) and as a result said fictitious difference in cost was passed

on in its entirety to the AEE's residential clients under the GRS rate which comprise the

class in the undersigned claim. We allege, in addition, that AEE has unduly added to

the adjustment clause, numerous additional costs, such as: a) the so called .89 factor

(which is nothing more than the cost of an existing agreement between AEE and the

country's municipalities for electric power in exchange for the taxes AEE  would

normally have to pay) b) legislative subsidies and preferential rates to hotels, hospitals,

churches, agricultural services, citizens over 65 years of age, recipients of the

Nutritional Assistance Program, residents of  public housing, credits to small

businesses among others c) the "E" factor, the intention of which is to try to recover the

cost for the loss, theft or unaccounted use and d)  power plants' heat rates and e) "c"

and "c1" adjustments therein the adjustment clause, which is the difference between the

total cost of fuel  and energy acquired by AEE and what was  recovered by the

adjustment clause. This latter, we allege, AEE includes the cost for bills rendered but

not collected by AEE to, among others, entities of the Government of Puerto Rico

which are not collected or collected in arrears and/or partially (*while AEE moves to shut

off services to those members of the undersigned class who fall behind in payment by

merely a month),* said charge being illicit, given its existence is due to the gross

negligence by AEE and its members of the Board of Governance who have allowed and

tolerated said situation, even when AEE's  own external auditors have advised them

that said practice constitutes the granting of an illegal subsidy in favor of certain

entities.  The known members of AEE's Board of Governance are included as defendant

Parts, given we allege that they defaulted in their fiduciary duty to AEE by tolerating and allowing it to incur in the conduct alleged in the complaint, which resulted to be detrimental to the members of the class.

Wherefore, we request, the return of said excess amounts collected, all therein the adjustment clause AEE charges its clients in addition to the basic rate charge and purchase of electricity from private electric power plants.

## II.    REPRESENTATIVE [LEAD] PLAINTIFF:

1.  Representative Plaintiff, Pedro J. Santiago Mendez, is a natural person, of legal age and resident of Guaynabo, P.R. with AEE account number 2003822000. His rate is the GRS. His address is M35 Wilson Street, Guaynabo, PR 00969.

2.  For more than 10 years, the Representative Plaintiff has been a residential customer of AEE. His electricity is billed at the so called General Residential rate.

## III. DEFENDANTS:

1. Defendant, AEE, is a public corporation, created under the provisions of Law 83 of May 2, 1941, as amended, with the faculties to file complaints and be filed against and with headquarters in San Juan, Puerto Rico. Its postal address is PO BOX 363508, San Juan, P.R. 00936. Also named as defendants are all the members of the Electric Power Authority's Board of Governance with postal address at PO BOX 363508, San Juan, P.R. 00936. Also named as defendants are its respective A, B, C assurers (Fictitious Name) [insurance companies] which have emitted public liability policies (Employment Practices Liability: Officers and Directors Liability, etc.) which are liable for damages caused by AEE and by the members of its Board of Governance for violations and default in their corporate fiduciary duties.

2. Defendant, COMMONWEALTH OF PUERTO RICO (ELA. [Span. accr.]), represented by its Secretary of Justice in his official capacity is the political entity for the People of Puerto Rico. Its postal address is PO BOX 9020192 San Juan, Puerto Rico, 00902-0192

3.    Defendant, Petrobras America, Inc. ("Petrobras"), is a foreign company from the State of Delaware, with nominated address in Puerto Rico, 361 San Francisco, Penthouse, Old San Juan,

PR 00901. It is in the business of, among other things, marketing, distribution, exporting, importing and sale of fossil fuels. It has done substantial business in Puerto Rico by having supplied fossil fuels to AEE for the last 10 years.

4. Defendant, Shell Trading (US) Company ("Shell") is a foreign company from the State of Delaware, with nominated address in Puerto Rico, Road 901, KM. 2.7 Yabucoa, PR 00967 It is in the business of, among other things, marketing, distribution, exporting, importing and sale of fossil fuels. It has done substantial business in Puerto Rico by having supplied fossil fuels to AEE for the last 10 years.

5. Defendant, Petrowest Inc. ("Petrowest"), is a domestic company from the State of Delaware, with nominated address in Puerto Rico, Road 345, KM 1.5, Hormigueros Industrial Park, PR 00660. It is in the business of, among other things, marketing, distribution, exporting, importing and sale of fossil fuels. It has done substantial business in Puerto Rico by having supplied fossil fuels to AEE for the last 10 years.

6. Defendant, VITOL S.A. ("VITOL 1"), is an anonymous Swiss entity and foreign entity, with addresses in Puerto Rico 3108 Julio Monagas Avenue, Ponce, PR 00717. It is in the business of, among other things, marketing, distribution, exporting, importing and sale of fossil fuels. It has done substantial business in Puerto Rico by having supplied fossil fuels to AEE for the last 10 years.

7. Defendant, VITOL, INC. ("VITOL 2"), is a foreign company from the State of Delaware, with nominated address in Puerto Rico 3108 Julio Monagas Avenue, Ponce, PR 00717. It is in the business of, among other things, marketing, distribution, exporting, importing and sale of fossil fuels. It has done substantial business in Puerto Rico by having supplied fossil fuels to AEE for the last 10 years.

8. Defendants, HARRY RODRIGUEZ GARCIA, LUIS BENITEZ HERNANDEZ, CARLOS BONILLA AGOSTO, ENID MONGE PASTRANA, LUIS SANTINI GAUDIER, CARLOS GALLISA BISBAL, MIGUEL A TORRES DIAZ (member ex-officio) and ALBERTO BACO BAGUE member ex-officio), are members of the Board of

Governance for the ELECTRIC POWER AUTHORITY. Its postal address is 811 PO Box 364267, San Juan, P.R. 00936-4267.

9.   Unknown defendants, A,B,C Assurers, Richard Doe and Jane Doe are insurance companies which may have issued policies in favor of one or more of the defendants covering their liability for the entirety or part of thus alleged in the complaint.

10. Unknown defendants 1-100, are natural or legal persons, currently unknown, who/which may also be liable to the Plaintiffs for one or more causes of action as set forth herein undersigned civil claim.

## IV.   GENERAL ALLEGATIONS:

### A. FUEL PURCHASING NOT IN ACCORD WITH QUALITY PARAMETERS

1.   AEE bills its residential clients under the GRS rate based upon a basic rate, which is supposed to cover all the non-variable [fixed] costs, such as payroll, equipment, improvements, maintenance, administrations, billing and all other operational expense except that for fuel and the purchase of energy from private co-generators.

2.   The cost for fuel is considered therein the basic rate at a nominal cost. Any excess between said nominal value for fuel in the basic rate and the real cost for acquiring it, is recovered through the so called "fuel adjustment clause (adjustment clause")."

3.   The so called adjustment clause includes, therefore, the excess fuel cost beyond the base cost for fuel (extremely low) in the basic rate. In theory, thus should be the only line item it should encompass; as per the way AEE thus represents to its clients. The adjustment clause, as originally approved, solely entailed the recovery of the difference between the base cost for fuel in the basic rate and the increase for said cost within global fuel markets.

4.   The billing received by residential customers solely makes reference to the concept of "fuel purchase"; for which the representation AEE makes to residential consumers under the general rate is that what is being billed is solely the concept of fuel purchase and not any other concepts.

5.   AEE, during the last 10 years, acquired and acquires diverse fossil fuels derived from petroleum as fuel to operate its various units and power plants for the generation of electric power in Puerto Rico.

AEE CLASS ACTION SUIT
Civil Number
Page - 6 -

6.    In general terms, AEE mostly utilizes as fuel, those denominated as fuels Numbers 2 and 6. Fuel number 2 is a crude oil distillate, whilst 2 is classified as a residual fuel from the same [crude].

7.    Some AEE's units or power plants consume [use] or may consume both fuel number 2 and 6; others, solely, utilize one single type of fuel.

8.    In order to acquire these products, AEE distributes Requests for Proposals [RFP's] to various suppliers. The price is based on the differential submitted by the prospective supplier in relation to the international market of reference. AEE should thereby award the contract to the responsive bidder who submitted the lowest differential.

9.    AEE's request for proposals also establish the quality parameters within the type of fuel to be acquired. Specifically, parameters for the content of sulfur in the fuel are required, (typically, 0.50% or less), "Thermal value or "BTU's" [British Thermal Units], that is, the amount of heat a specific fuel unit is able to generate, viscosity, specific gravity and the level of other toxic and/or contaminating substances in the fuel; thus in order for AEE to comply with federal and/or state regulations.

10.   All these parameters inside upon the quality and, therefore, upon the price of the fuel acquired by AEE. The stricter the parameters, the higher the price.

11.   A fuel's thermal value is vital to the operational efficiency of the electric power system, and should the thermal capacity of fuel be inferior, such deficiency ends up being paid by AEE's residential consumers by means of the fuel adjustment clause. If thermic values as lesser, more fuel would have to be acquired and burned in order to generate the same amount of electric power.

12.   The total cost for fuel acquired, minus the base cost for fuel therein the basic rate, is transferred in its entirety to AEE's residential consumers by means of the adjustment clause afore described.

13.   During the last 10 years, AEE and its Board of Governance, with full knowledge of the facts [knowingly], has been acquiring fossil fuels from co-defendants which do not comply with the requisites and criteria for fuel quality as mentioned afore, however, paying as if they did thus comply.

14.  Said purchases were justified at AEE on the basis of altered, falsified or manipulated laboratory reports supplied by laboratories contracted by co-defendant suppliers, with the full knowledge of AEE's purchasing officers.

15.  On occasions the laboratories varied or altered equipment calibration or testing methodologies. When a test gave a result of non-compliance with parameters, the supplier obtained another one altered by another laboratory with the purpose of justifying the sale of the non-conforming fuel pursuant to established purchasing parameters. Said illicit purchases favored and/or favor AEE, by allowing it to operate its power plants with lesser quality fuels and thus curtailing having to make considerable investments in equipment and infrastructure, necessary for operating with the high quality fuel that state and federal regulations require.

16.  The afore referred illicit purchases also benefited the co-defendant suppliers in that these obtained higher proceeds to thus agreed to in their contracts with AEE, by selling a lesser quality fuel at the price of a higher quality fuel.

**B. ACCOUNTS RECIEVABLE**

17.  AEE, as a public corporation with full legal personality, separate and independent from the State and to other natural and legal persons in Puerto Rico, in the performance of its duties and its operations, cannot discriminate in favor or against any other natural or legal person, including the State.

18. The adjustment clause has, among other things, the so called adjustment "c". Thus allows AEE to recover from its consumers and clients, the difference between the real cost of fuel acquired by AEE and the money recovered (for having been paid on time by clients) by the adjustment clause.

19. The adjustment clause has, among other things, the so called adjustment "c". Thus allows AEE to recover from its consumers and clients, the difference between the real cost of fuel purchased from private co-generators, acquired by AEE and the money recovered (for having been paid on time by clients) by the adjustment clause by this concept.

20. These adjustments allow AEE to recover from its clients, the difference between the cost for acquired fuel (when it uses it to generate its own power) and purchased energy (when it is acquired from private co-generators) and the amounts recovered from its clients by these two concepts by means of the basic section of the adjustment clause.

21. Thus allows AEE to recover the cost of purchased fuel or energy utilized to generate energy it produces, distributes and bills to certain clients, such as government agencies and public corporations, but which is not collected in timely fashion.

22. During the last 10 years, AEE and its Board of Governance have discriminated [been discriminatory] as far as concerns its operational policy for managing its accounts receivable, in favor of the State and other industrial and commercial entities.

23. Meanwhile, the members of the class are imposed with an efficient collections system which involves service interruption post 30-60 days of non-payment of a bill; certain State agencies, public corporations and some private entities continue to be supplied with power after said excess period of time has transpired and have been allowed and continue to be allowed and/or it is tolerated that they maintain very high accounts payable which undermine and adversely affect AEE's operational capacity. The costs for such inefficiency, are unduly billed to the members of the class by means of the fuel adjustment clause.

24. In accord with AEE's operational protocols, in the case that a client under the residential rate, GRS, (the members of the class) fails to pay an electric power bill on time, AEE, with a scantly conceivable efficiency, proceeds to immediately shut off [discontinue, interrupt] (between 30 − 60 days) electric power services. Thus obliges affected clients to pay the reconnection fee and suffer the interruption of services prior to reconnection.

25. Notwithstanding, AEE and its Board of Governance maintains tens of millions of dollars in accounts receivable for COMMONWEALTH [ELA] entities, public corporations, businesses, industries and other favored clients; which uphold arrears which fluctuate between two and 36 months.  These privileged clients do not get their electric power service shut off; which continues uninterrupted regardless of the longevity (length) of the arrears these have in the payment of their bills. Notwithstanding, the cost is transferred to the members of the class who do get their service shut off immediately.

26.  AEE does not undertake substantial collections efforts for these accounts payable and by knowledge and belief it is understood that the cost for interest and loss of cash flow that the actions of have led AEE to, are also included [billed] to the regular residential clients of AEE therein the fuel adjustment clause.

27. By way of example, if AEE spent $100,000.00 on fuel that it took to incinerate in order to provide service to public corporation X, and it did not pay its bill when due [-] with the $100,000.00 charge therein the adjustment clause that AEE spent to supply it with power, (which shall appear on the bill to corporation X in the adjustment clause) then, those $100,000.00 are passed along for payment by the members of the class because their recovery is permitted therein the adjustment clause as fuel acquired under the so called adjustment "c" therein the adjustment clause. This last allows for AEE to recover the cost for fuel acquired but not recovered by AEE collections. In this fashion, is thereby transferred to the members of the class, the real cost for AEE's inefficiency and negligence by not shutting off services to such entities.

28. Notwithstanding, when corporation X makes one or various payments towards its arrears (if at all) AEE does not grant a credit to the members of the class for the overcharge they suffered during the months in which the corporation did not pay for the fuel AEE was to use for providing them service.

29. **In accordance with the Report by FTI Capital Advisors, submitted to AEE on November 15, 2014, as part of a debt restructuring agreement with its financiers [bonds holders, holders of debentures,] the public corporations owed AEE the sum of $200,000,000.00 in past due accounts receivable; of which more than $140,000,000.00 were past due more than 120 days.** The report itself emphasizes that [the following excerpts herein paragraph in quotations are verbatim quotes in English from the original document] "ultimately, the non-payment by the public corporations results in a de facto subsidy to these corporations, which has been exacerbated by the inability to take enforcement actions against non-payers", pg. 17 of the report referred afore. (emphasis Added) The report recommends to AEE that: "PREPA should commence cut-of at this locations with past due accounts receivables to send a message to the public corporations". (Foot note omitted). This "de facto" subsidy is of course recovered illicitly by AEE from the members of the class by conduit of the adjustment clause.

30. AEE and its Board of Governance have paid no heed to [ignored] such recommendation from its own advisors. On the contrary, by knowledge and belief, our understanding is that the

sums owed have significantly increased in the past months. On the other hand, government clients (E.L.A. agencies) maintained at the month of November, 2014, $48,200,000.00 in past due accounts. FTI Capital Advisors report submitted to AEE on November 15, 2014 (supra) page 18.

31.   Co-defendant, Commonwealth of Puerto Rico (ELA) has unduly influenced in the internal administration and operation of co-defendant, AEE, with the end and purpose of achieving that it desist in performing any affirmative and concrete collections effort surrounding the debt the COMMONWEALTH [ELA] and its instrumentalities owe AEE. This illicit act constitutes the granting of a subsidy to the COMMONWEALTH [ELA] without legal basis whatsoever. Whilst the members of the class have their service ordered to be shut off in the case of any minimum lateness; the COMMONWEALTH [ELA] is condoned millions of dollars in accounts receivable in detriment to the interests of the members of the class.

32.   In terms of the Municipalities, in accordance to AEE's Organic Law, it is obliged to separate a percentage of its net income (after paying all its expenses and debt service), to compensate against the consumption of electric power by the municipalities. That in exchange for AEE not having to pay the municipalities property taxes and municipal permits [licenses]. Thus is what is known as "contribution in lieu of taxes" or CILT for its English acronym. Said sums are deposited by AEE in a special fund which was compensated against the real consumption by municipalities.

33. For decades, the system worked adequately while AEE showed yearly net surpluses. Notwithstanding, during the past years, AEE has not shown any net profit, hence it has found itself impeded from paying into the contribution in lieu of taxes fund.

34.   While this occurs, municipalities continue to consume energy and AEE bills for it. By there being no contribution to the fund by AEE, the differential between that which the municipalities consumed and the ever lessening special fund began to increase. AEE then preceded to bill the differential to the municipalities.

35.   Notwithstanding, municipalities are not paying said bills in the belief that they are exchanging energy for taxes. Thus has led AEE to accrue

accounts receivable for the municipalities at November, 2014, of $420,000.00. FTI Capital Advisors' report, submitted to AEE on November 15, 2014 (supra) page 19. Pursuant to said report, these are valid AEE accounts receivable, given the so called exchange of energy in lieu of taxes operates solely to the degree in which AEE upholds operational net income. Once again, this subsidy to the municipalities is paid by the members of the class.

36. Insult to injury [worse even], despite that AEE has for various years shown no operational net income and, therefore, has not been making contributions to the contributions in lieu of tax fund, AEE continues to bill the members of the class for these now inexistent contributions under the so called .89 factor therein the adjustment clause.

37. Even during those years in which AEE did have operational surpluses and did make yearly contributions to the contributions in lieu of tax fund, it could not validly bill this cost to the members of the class; given that said contributions do not correspond to an operational expense of AEE; but rather to the contrary, they are only to be made in the case AEE obtains a yearly surplus.

38. What AEE did is the equivalent of a private business to take its income taxes to be paid to the State, and include them along its operating expenses; which would be utterly unduly.

## C. OTHER COSTS UNDULY PASSED ON TO THE MEMBERS OF THE CLASS:

39. With regards to adjustment "c" therein the adjustment clause are encompassed, all the unjustified inefficiencies in AEE's operation and those by the Board of Governance, such as energy theft, power sold at a price lower than its production cost (i.e., subsidies) and power correctly billed but not collected on time to entities favored by AEE's collections policy, mostly the government-itself- and its dependencies.

40. All these costs, intrinsic to the nature of the adjustment clause have been transferred by AEE and the Board of Governance and continue to be transferred illegally to the members of the class by means of the adjustment clause.

## VI.   DEFINITION OF THE CLASS

1. The class in this case is comprised by almost all residential consumers under the GENERAL RESIDENTIAL RATE, or GRS. Excluded are all other residential,

commercial, and industrial consumers. Exclude in addition, are AEE officers, employees, contractors and agents; as well as members of its Board of Governance. Also excluded are the legal counsel of the class, its advisors and experts.

## VII. LEGITIMACY [LAWFULNESS] OF THE CLASS ACTION

1. Law Num. 118 of June, 1971, 32 LPRA 334, acknowledged the right of consumers of goods and services to file a class claim on behalf of said consumers by concept of damages. Said law requires that two basic requisites be complied with, in the first place, it requires that the Court determine, as soon as possible, if the claim can continue as a class action, when amongst the consumers allegedly aggrieved there exists a common question of fact and law. It requires, in addition, that the class action is superior to other available venues for fairly adjudicating the controversy. Once these two criteria are satisfied, it is duly to determine whether thus complies with the other criteria established therein Civil Proceedings Rule 20.1, providing thus must be done in accord to the spirit of freedom permeated therein Law 118 (supra). See *José Guzmán Matías vaquería Tres Monjitas, Inc.* et al. 2006 PRSC 187. These requisites are generally known as numerosity, typicality, and adequate representation. See *Guzmán Matías* (supra); *Cuadrado Carmón v. Romero Barceló*, 120 L.P.R. 434 (1988). In order to certify [admit/sustain] a claim as a class action, it is necessary to satisfy, in addition, at least one of the requisites for Civil Proceedings Rule 20.2 (supra), as follow:

   a)   That in the case individual claims are filed, there is a risk of inconsistent legal decisions be made or that the rights of individual persons may be adversely affected.
   b)   That the part who opposes the class has assumed a position that applies to the class for which, fortuitously, an injunction or declaratory judgment would resolve the case for all.
   c)   That the question of fact and law is common amongst the class members predominates over any matters that affect merely members.

## REQUISITE OF NUMEROSITY

3.   In accordance with AEE data, it is estimated to be 1,333,857, the number of residential clients, of which approximately 80% of these are of [recipients] of the General Residential rate and service, that is, some 1,067,085 paying customers are class members.

4. Given that Co-defendant, AEE, provides electric power services to the entirety of all legal regions within the Commonwealth of Puerto Rico; it would result to be impractical

to accumulate [amass] all the members of the class and given they reside throughout all the Legal Regions, said accumulation would be highly burdensome.

5.   The immense majority of the total claims by the members of the class would not justify the instance of individual claims by the members of the class or by the accumulation of all of them in the undersigned case.

6. The individual identification of the members of the class would be extremely difficult, impractical and costly in any other proceedings other than a consumer class action.

## COMMONALITY REQUIREMENT

7. Pursuant to the allegations in the undersigned case, which are added to this section by reference, there is a question of fact and law which is common to all the members of the class, which is that all have been subject to the same illicit practices by AEE in its billing processes.

8.   Pursuant to the allegations in the undersigned case, which are added to this section by reference, there is a question of fact and law which is common to all the members of the class, which is that the billing procedures utilized by AEE has the effect of substantially and artificially increasing the amount that each client has to pay for power consumption, thus which constitutes a breach of the terms and conditions of the existing contract for its provision between AEE and its clients.

9.   The consideration of all the allegations by the members of the class within one single legal proceeding would prevent a multiplicity of legal proceedings in diverse Legal Regions in Puerto Rico, as well as the fragmentation of the class members' claims.

## TYPICALITY REQUIREMENT

10.   Pursuant to the allegations in the undersigned case, which are added to this section by reference, the Representative [Lead] Plaintiff claims totally identify with those of the members of the class.

11.   Both are based on the same core of common facts, given that in both cases, the billing procedures utilized by AEE have the effect of substantially and artificially increasing the amount each client has to pay for

their power consumption which constitutes a violation of AEE's own regulations as well as the terms and conditions of the existent contract for its provision between AEE and its clients.

12.    To the degree in which the Representative Plaintiff advances his interests in the undersigned case, in identical fashion, the interests of the entirety of the members of the class are advanced, given they both claim the reimbursement of thus billed in excess by AEE as well as damages suffered as a result of the illegal act by Defendants, AEE and its Board of Governance and co-Defendants.

## ADEQUATE REPRESENTATION

13.    The Representative Plaintiff has the academic training, experience and judgment necessary to adequately represent the proponent class. He has a direct and individual interest in the result of the claim, and therefore, is committed to vigorously plead the causes of action common to the members of the class.

14.    The Representative Plaintiff has no type of conflict of interest to prevent the just and adequate representation of the members of the class.

15.    The Representative Plaintiff's legal counsel have the experience and training necessary to guarantee aggressive and vigorous litigation. They are experienced attorneys in Class and multiple parts litigation.

## OTHER CRITERIA

16.    The Complaint in the undersigned case clearly complies, in addition, with the remaining evaluative criteria for a class plaintiffs certification petition, i.e.: a) that in the case individual claims are filed, the risk of inconsistent legal decisions would be run or the rights of individual persons may be adversely affected; b) that the questions of fact and law, common amongst the members of the class predominate over any questions which affect merely members.

17.    In terms of the first criterion, by having members of the class throughout the entirety of the Legal Regions in Puerto Rico, each one of which has different Panels for their respective Courts of Appeals for hearing appellative recourses, the filing of individual cases would create the risk of there be differing and inconsistent rulings. In the same fashion, the filing of individual claims may limit the rights of some members of the class to the degree that

said recourses are not filed [litigated] vigorously or with the correct arguments and in lawfully apt fashion.

18. With regards to the second criterion, pursuant to the allegations in the undersigned case, which are added to this section by reference, there is a question of fact that is common to all the members of the class, which is that all were forced to pay in excess of what they should really have paid when they were billed costs by AEE which they would usually have to pay.

### VIII.  CAUSES OF CLASS ACTION AGAINST CO-DEFENDANT, AEE

#### A.      WILLFUL INTENT, FAULT OR NEGLIGENCE IN COMPLIANCE WITH ITS CONTRACTUAL OBLIGATIONS

1.    The negligent and/or reprehensible and/or willful acts by Defendant, AEE, by illegally and knowingly approve a rates structure by means of the so called fuel adjustment clause, it transferred directly to the members of the class, millions of dollars in unduly charges by the concepts afore indicated [which] constitute a breach of the terms and conditions of the contractual relationship between the members of the class and AEE.

2.  Said conduct by AEE infringes on the provisions of Articles 1054, 1056, 1057, 1059 and 1060 of the Puerto Rico Civil Code and pursuant to the aforementioned article, the members of the class must be indemnified for the amounts illegally included by AEE in its billing to the members of the class during the past 10 years.

3.  The conduct referred to afore constitutes, in addition, a violation of the provisions of Civil Code Article 1054, 1057, 1059 and 1060 (Willful intent to default in complying with its obligations) thus which allows the members of the class to reasonably file for damages which derive from their [AEE"s] default in compliance.

4.  The acts afore referred are proximate cause for the damages suffered by the members of the class during the term of 10 years prior to the filing of the undersigned Complaint by the concepts described in the paragraph afore.

#### B. UNJUST ENRICHMENT

1. The negligent and/or reprehensible and/or willful acts by Defendant, AEE, by illegally and knowingly approve a rates structure by means

of the so called fuel adjustment clause, it transferred directly to the members of the class, millions of dollars in unduly charges by, the concepts afore indicated [which] constitute the unjust enrichment by AEE, as defined said doctrine therein Puerto Rico jurisprudence. (See "*Municipio de Quebradillas v Corporación*" 180 D.P.R. 1003).

2. Said conduct by AEE is contrary to the provisions of jurisprudence which acknowledge the cause of action for unjust enrichment in Puerto Rico and is sustains that pursuant to said aforementioned jurisprudence, that the members of the class be indemnified for the sums illegally included by AEE in its billing to the members of the class during the last 10 years.

3. In the undersigned case, there is unjust enrichment by AEE, impoverishment to the members of the class, there is no justified cause for the enrichment, it has no legal precepts to sustain it and the acts by AEE is proximate cause for the damages suffered by the members of the class during the term of the 10 years prior to the filing of the undersigned Complaint by concepts herein described the undersigned Complaint.

## IX. CAUSES OF CLASS ACTION AGAINST AEE's BOARD OF GOVERNANCE:

A.     WILLFUL INTENT, FAULT OR NEGLIGENCE IN COMPLIANCE WITH ITS FIDUCIARY OBLIGATIONS

1.     The negligent and/or reprehensible and/or willful acts by the members of AEE's Board of Governance, by illegally and knowingly approve a rates structure by means of the so called fuel adjustment clause, it transferred directly to the members of the class, millions of dollars in unduly charges by, the concepts afore indicated [which] constitute a breach of their fiduciary duties to AEE and to public interest.

2.     The negligent and/or reprehensible and/or willful acts by the members of AEE's Board of Governance, by allowing, tolerating and accepting that AEE not exert affirmative collections efforts surrounding AEE's accounts receivable more than 60 days past due, and specially, those of the COMMONWEALTH [ELA] and its instrumentalities and not supervising said unduly conduct by AEE (thus which constitutes information known by or

which should have been known by the members of the Board of Governance), constitutes a violation of their fiduciary duties to AEE and to public interest.

3.  The negligent and/or reprehensible and/or willful acts by the members of AEE's Board of Governance, by allowing, tolerating and accepting that AEE to conspire and agree with its fuel suppliers to purchase and acquire fuel of lesser quality than thus specified and not supervising said unduly conduct by AEE (thus which constitutes information known by or which should have been known by the members of the Board of Governance), constitutes a violation of their fiduciary duties to AEE and to public interest.

4.  Said conduct by AEE is contrary to the provisions of Puerto Rico Civil Code Article 1802 and pursuant to said aforementioned article, that the members of the class be indemnified for the sums illegally included by AEE in its billing to the members of the class during the last 10 years.

5.  The conduct referred to afore constitutes, in addition, a violation of the provisions of Civil Code Article 1054, 1055, and 1060 (Willful intent to default in complying with its obligations) thus which allows the members of the class to reasonably for damages which derive from their [AEE"s] default in compliance.

6.  The acts afore referred are proximate cause for the damages suffered by the members of the class during the term of 10 years prior to the filing of the undersigned Complaint by the concepts described in the paragraph afore.

## IX.   CAUSES   OF   CLASS   ACTION   AGAINST   THE COMMONWEALTH [ELA]:

### A.   UNJUST ENRICHMENT

The negligent and/or reprehensible and/or willful acts by Co-defendant, Commonwealth of Puerto Rico (ELA) has unduly influenced in the internal administration and operation of co-defendant, AEE, with the end and purpose of achieving that it desist in performing any affirmative and concrete collections effort surrounding the debt the COMMONWEALTH [ELA] and its instrumentalities owe AEE. This illicit act constitutes the granting of a subsidy to the COMMONWEALTH [ELA] without legal basis whatsoever, constitute unjust enrichment by the COMMONWEALTH [ELA], as said doctrine is defined in Puerto Rico jurisprudence (See "*Municipio de Quebradillas v Corporación*" 180 D.P.R. 1003).

2. Said conduct by the COMMONWEALTH [ELA] is contrary to the provisions of jurisprudence which acknowledge the cause of action for unjust enrichment in Puerto Rico and thus sustains that pursuant to said aforementioned jurisprudence,  the members of the class be indemnified for the sums illegally included by AEE in its billing to the members of the class during the last 10 years.

3. In the undersigned case, there is unjust enrichment by the COMMONWEALTH [ELA], impoverishment to the members of the class, there is no justified cause for the enrichment, it has no legal precepts to sustain it and the acts by AEE is proximate cause for the damages suffered by the members of the class during the term of the 10 years prior to the filing of the undersigned Complaint by concepts herein described the undersigned Complaint.

## XI. CAUSES OF CLASS ACTION AGAINST ALL DEFENDANTS, EXCEPT [ELA]:

### A. VIOLATION TO THE PUERTO RICO ANTITRUST ACT

1. The actions by AEE and its Board of Governance by mutual agreement, collusion and/or conspiracy with Co-Defendants, Petrowest, Petrobras, Shell, Vitol 1 and V., to supply AEE with fuel non-conforming with the specifications required while representing in the shipping documentation that it did, constitutes a violation of Article 2 of the Puerto Rico Antitrust Act (Law 77 – 1964) by unreasonably restricting businesses and/or commerce in Puerto Rico.

2. For purposes of the undersigned Complaint, the relevant product is constituted by fuels number 2 and 6 to be utilized for the generation of electric power to be distributed and sold in Puerto Rico.

3. The relevant geographic area is constituted by the entirety of the territory of Puerto Rico.

4. The members of the class are all persons who have been aggrieved at their properties for such illicit acts and in accord with thus provided in Article 12 of the Puerto Rico Antitrust Act and have a right to recover Three (3) times the amount of damages suffered as a result of the aforementioned elicit conduct.

5. The actions by Co-Defendants as described afore are the proximate cause of the damages suffered by class members.

### B. VIOLATIONS TO CIVIL CODE ARTICLE 1802

1. The actions by AEE and its Board of Governance by mutual agreement, collusion and/or conspiracy with Co-Defendants, Petrowest, Petrobras, Shell, Vitol 1 and V., to

supply AEE with fuel non-conforming with the specifications required while representing in the shipping documentation that it did, constitutes a violation of Puerto Rico Civil Code Article 1802.

2. The members of the class are all persons who have been aggrieved at their properties for such illicit acts and in accord with thus provided in Article 1802 of the Puerto Rico Civil Code and have a right to recover Three (3) times the amount of damages suffered as a result of the aforementioned elicit conduct.

3. The actions by Co-Defendants as described afore are the proximate cause of the damages suffered by class members.

## XII. REMEDIES REQUESTED FOR THE MEMBERS OF THE CLASS:

A. INDEMNITY:

1. The members of the class claim as follows:

a) reimbursement of the difference between the amounts billed by AEE and the line item for the fuel adjustment clause and what they would have paid if AEE had paid the global market price for the lesser quality fuel that was acquired in reality.

b) reimbursement of the difference between the amounts invoiced by AEE in the line item for the fuel adjustment clause which should not have been included in said line item and what they would have paid by concept of the fuel adjustment clause to AEE if said items would not have been unduly added.

2. In both instances the period claimed for extends to the term of 10 years immediately prior to the filing of the undersigned claim.

c) interest as lawfully allowed from the date of payment of the excess bills to date

d) the amount of $500.00 for each member of the class by concept of damages each member of the class was caused by the Defendant

f) an additional amount for class attorneys' fees equivalent to 25% of the total sum for the items therein prior sub-sections

e) costs and expenses for proceedings

3. In the case of claims under article 2 of the Puerto Rico Antitrust Act, as provided, that the damages paid be tripled , pursuant to Article 12 of the Antitrust Act.

4. With regards to the remaining claims, that they be doubled, pursuant to the provisions of Law number 118 of June 25, 1971.

### B. PERMANENT INJUNCTION

1.We request this Honorable Court to rule a Permanent Injunction against AEE so that is cease and desist from transferring to the members of the class those costs it incurs not related to increase in the cost of fuel it consumes; such as a) the so called .89 factor, b) legislative subsidies and preferential rates, c) the "E" factor which tries to recover the cost for energy loss, theft or thus unaccounted, d) the lack of heat rate of power plants and e) adjustment "c" therein the adjustment clause, which is the difference between the cost of fuel acquired by AEE and thus recovered by the adjustment clause.

2. We request that this Honorable Court rule a Permanent Injunction against all defendants to cease and desist from supplying, providing and selling fuels to AEE that do not comply with the criteria for quality specified therein requests for proposal for the purchase of fuel by AEE.

**WHERE TO FORE,** we hereby very respectfully request that this Honorable Court finds **CAUSE** for the undersigned complaint and as a result:

a)  To certify the undersigned as a Class Claim;

b)  To reimburse the sums claimed afore;

c)  Rule a Permanent Indictment as described.

**RESPECFULLY SUBMITTED** in San Juan, Puerto Rico today, February 19, 2016.

**COUVERTIE-BARRERA**
**LAW OFFICES**
P. 0. Box 191782
San Juan, Puerto Rico 00919-1782
TEL: (787) 751-5811/615-4044/ 525-7417

By: Atty. Alberto Couvertie- Barrera (13954)

*BAR: 12525*

By: Lcdo. Juan R Dávila Díaz (171146)

Fax:
758-
7189

E-MAIL: alcouver@hotmail.corn
E-MAIL: davilajuan@yahoo.com

**LIC. MANUEL FERNANDEZ MEJIAS**
Num. 8170
2000 Road 8177
Suite 26 PMB 246
Guaynabo PR 00966
Tel 787-462-3502 Fax: 787-753-6482
Email: pga@caribe.net

**LIC. MARCO A. RIGAU JIMENEZ**
TSPR 3616
San Juan, PR 00920
Tel. 787-705-0219E mail
rigau1@yahoo.com

<u>**CERTIFICATION BY TRANSLATOR**</u>

**I, Guillermo Cordero, a professional English – Spanish – French – Italian and Portuguese translator and interpreter do hereby certify that I have translated the foregoing document and it is a true and accurate translation, to the best of my knowledge and abilities.**



_____          __04/02/2016___

Guillermo Cordero                    Date